UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC., *et al.*, | : | Case No. 3:11-cv-58 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| PUB DAYTON, LLC, *et al.*, | : | |
| Defendants. | : | |

**DECISION AND ENTRY: (1) GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (DOC. 10); (2) AWARDING STATUTORY DAMAGES IN THE AMOUNT OF $31,000; (3) AWARDING ATTORNEY'S FEES AND COSTS IN THE AMOUNT OF $3,082.03; (4) ENJOINING AND RESTRAINING DEFENDANTS FROM FURTHER INFRINGEMENTS; AND (5) TERMINATING THIS CASE**

This civil action is before the Court on Plaintiffs' Motion for Default Judgment. (Doc. 10). Plaintiffs filed their Complaint on February 25, 2011. (Doc. 1). Summons were issued to all Defendants on that same date. (Doc. 3). Defendants Bob Hutsenpiller and Pub Dayton, LLC were served on March 1, 2011, and their answers to the Complaint were due on or before March 22, 2011. (Doc. 7). Defendants Mark Fallon and W.N. Sanders were served on March 2, 2011, and their answers to the Complaint were due on or before March 23, 2011. (*Id.*)

Following Defendants' failure to file answers, Plaintiffs applied for an entry of default against Defendants (Doc. 8), which was entered by the Clerk on April 1, 2011. (Doc. 9). Plaintiffs then filed their Motion for Default Judgment. (Doc. 10). No Defendant filed a response to Plaintiffs' Motion; however, following the filing of Plaintiffs' Motion, Counsel entered an appearance on behalf of Defendants Pub Dayton and Sanders and requested a hearing on the issue of statutory damages. (Doc. 11).

## I. FACTS

Plaintiff Broadcast Music, Inc. ("BMI") possesses the right to license the public performance of numerous copyrighted music owned by Plaintiffs Universal Songs of Polygram International, Inc. ("Universal Songs"), Stone Diamond Music Corp. ("Stone Diamond"), House of Cash, Inc. ("House of Cash"), and Songs of Universal, Inc. ("Songs of Universal"). (Doc. 1). Defendant Pub Dayton, LLC ("Pub Dayton") operates an establishment known as The Pub Beavercreek in the Southern District of Ohio. (*Id.*) Pub Dayon "publicly performs musical compositions and/or causes musical compositions to be publicly performed" at the establishment. (*Id.*) The remaining Defendants, Hutsenpiller, Fallon and Sanders, in their various capacities, are responsible for operating and managing The Pub Beavercreek. (*Id.*)

Sometime before January 2008, BMI learned that Defendants were publicly performing music in their establishment without a license and without the permission of Plaintiffs. (Doc. 10-2). From January 8, 2008 through August 2010, BMI sent 24 letters to Defendants informing them that a license was required to publicly perform music owned and/or licensed by Plaintiffs. (Doc. 10-3). In much of that correspondence, Plaintiffs offered to sell a license to Defendants that would allow them to publicly perform Plaintiffs' music legally at The Pub Beavercreek. (*Id.*) In addition to the letters sent to Defendants, BMI's licensing personnel telephoned Defendants 68 times regarding the licensing requirements. (Doc. 10-2). At no time did Defendants enter into a licensing agreement with BMI. (*Id.*)

On June 16, 2010, Plaintiffs sent an investigator, Bryan Mitchell, to The Pub Beavercreek to "make an audio recording and written report of the music being publicly

performed" at that establishment. (*Id.*) That investigation revealed that Defendants publicly performed at least four songs on that date. (Doc. 1). Plaintiffs advised Defendants of their investigation via letter and again offered Defendants another opportunity to resolve the matter by entering into a license agreement in exchange for payment of outstanding licencing fees in the amount of $10,208.70, plus the costs of investigation. (Doc. 10-3).

According to Paul Knipler, Senior Director, Business Affairs for BMI, "[h]ad the Defendants entered into an agreement at the time BMI first contacted them in January 2008, the estimated license fees between January 2008 and December 2010 would have been approximately $10,208.70" and [t]he current annual license fee would be approximately $3,522.30." (Doc. 10-2). Having failed to informally resolve the issues with Defendants, Plaintiffs filed this lawsuit alleging four counts of copyright infringement (Doc. 1) and now move for default judgment. (Doc. 10).

## II. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-0298 MCE DAD, 2010 WL 3341566, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319, 1323 (7th Cir.1983) (further citations omitted)).

In other words, while liability may be shown by well-pleaded allegations, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 WL

2572713, at *5 (E.D. Mich. Jun. 23, 2010). To ascertain an uncertain sum of damages, Rule

55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing."

*Vesligaj v. Peterson*, 331 Fed. Appx. 351, 354-55 (6th Cir. 2009). Instead, the court may rely

on affidavits submitted on the issue of damages. *See Schilling v. Interim Healthcare of*

*Upper Ohio Valley, Inc.*, No. CIV A 206-CV-487, 2007 WL 152130, at *2 (S.D. Ohio Jan.

16, 2007); *see also LaFarge North America Inc. v. Wells Group, Inc.*, No. 4:08-cv-95, 2009

WL 2601854, at *4 (E.D. Tenn. Aug. 24, 2009); *Frazier v. Absolute Collection Serv., Inc.*, - -

- F. Supp.2d - - -, 2011 WL 529997, at *5 (N.D. Ga. Feb. 3, 2011) (stating that certain courts

note "that an evidentiary hearing is not necessary where the moving party has provided

supporting affidavits as to the issue of damages").

### III. ANALYSIS

#### A. Injunctive Relief

First, Plaintiffs request that the Court enjoin and restrain Defendants "from infringing,

in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C.

§ 502." (Doc. 10). "[A] 'showing of past infringement and a substantial likelihood of future

infringement' justifies issuance of a permanent injunction.'" *Bridgeport Music, Inc. v. Justin*

*Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007) (citing Melville B. Nimmer & David

Nimmer, Nimmer on Copyright § 14.06 [B] (2007)). In fact, "'[w]hen a copyright plaintiff

has established a threat of continuing infringement, he is entitled to an injunction.'" *Id*.

Here, the requirement of past infringement is satisfied. Further, in light of

Defendants' acts of ignoring Plaintiffs' 92 attempts over a two-and-a-half year period of time

seeking to inform Defendants of their need to obtain licensing in order to publicly perform

copyrighted works and ignoring Plaintiffs' requests to cease and desist the public

-4-

performance of music licensed by BMI, the Court concludes that there is a substantial likelihood of future infringement.

Accordingly, Plaintiffs' Motion in this regard is **GRANTED**. Defendants shall be **ENJOINED** and **RESTRAINED** from infringing, in any manner, the copyrighted musical compositions licensed by BMI.

### B.    Statutory Damages

"[A]n infringer of copyright is liable for either - (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages[.]" 17 U.S.C. § 504(a). Here, Plaintiffs seek statutory damages under 17 U.S.C. § 504(c)(1), which provides that:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

Plaintiffs seek statutory damages in the amount of $7,750 per each of the four claims of infringement, which would total $31,000, an amount approximately three times the amount Defendants should have paid in licensing fees from January 1, 2008, to December 31, 2010.

When determining the proper amount of statutory damages within the range set forth in § 504(c), "courts have looked to: (1) whether Defendants' infringement was willful, knowing, or innocent; (2) Defendants' profit from infringement; (3) Plaintiffs' loss from infringement; and (4) deterring future violations by Defendants and similarly situated entities." *Broadcast Music, Inc. v. H.S.I., Inc.*, No. 2:06-cv-482, 2007 WL 4207901, at *6 (S.D. Ohio Nov. 26, 2007) (citing *Sailor Music v. IML Corp.*, 867 F.Supp. 565, 570

(E.D.Mich.1994); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 914 (D.Conn.1980)).

With regard to the willfulness of the infringement, the evidence presented establishes

that, beginning in early 2008, and continuing for over two-and-a-half years, Plaintiffs sent

Defendants 24 letters and placed 64 phone calls (*i.e.*, 98 total communications) to Defendants

informing them of the requirements of a license, offering licenses to Defendants, and

ordering Defendants to cease and desist playing copyrighted music without a license. In light

of this evidence and the admissions resulting from default, the Court concludes that

Defendants' infringement was willful. *See H.S.I.*, 2007 WL 4207901 at *5.

With regard to profits and losses associated with the infringements, Plaintiffs evidence

$10,208.70 in lost licensing fees. (Docs. 10-2; 10-3). While Knipler, in his affidavit, refers

to this amount as "estimated," the Court concludes that Plaintiffs sufficiently set forth the

appropriate figure of Defendants' costs savings and Plaintiffs' loss. As one court recently

stated, even where the amount of licensing fees "is an approximation," such figure can be "a

sufficient indicator that Defendants recognized significant savings as a consequence of their

infringement, and, conversely, that Plaintiffs suffered a revenue loss." *Broadcast Music, Inc.*

*v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp.2d 537, 545 (E.D. Pa. 2008).

Further lending support to the appropriateness of this figure here, the Court notes that, pre-

suit, Plaintiffs actually offered a license to Defendants in exchange for payment of

outstanding fees in this exact amount, plus a $491.83 investigation fee. (Doc. 10-3).

Defendants Pub Dayton and Sanders request a hearing to assist in determining

statutory damages. (Doc. 11). In their Memorandum written in support of their request, Pub

Dayton and Sanders do not contest the amount of outstanding licensing fees, and their

Memorandum does not suggest any intent to contest those figures at a hearing.  (Doc. 11).

Instead, Defendants seek a hearing to present information regarding "the size and nature of

defendant's business in light of the fact that the Copyright Act must redress not only claimed

infringement by relatively small restaurants or clubs but also large-scale piracy."  (*Id*.) (citing

*W.B. Music Corp. v. Symetry Enterprises, LLC*, No. 3:06cv1214, 2007 WL 2126361

(D.Conn. Jun. 26, 2007).

      In cases involving a determination of statutory damages under 17 U.S.C. § 504(c),

"courts can order the minimum statutory damages without conducting a hearing."  *Broadcast*

*Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp.2d 537, 544 (E.D. Pa.

2008) (citations omitted).  Further, courts also need not hold a hearing in cases where the

request for statutory damages exceeds the statutory minimum if "the record . . . is sufficient

to make such a determination."  *Id*.

      Here, no hearing is necessary in order to fix the appropriate award of statutory

damages despite the fact that Plaintiffs seek to impose $7,750 per infringement, an award

above the minimum statutory amount (though far below the maximum).  The record before

the Court, including affidavits and documentary evidence provided by Plaintiffs, is more than

sufficient to make the determination of statutory damages.[1]

---

[1]  In *W.B. Music Corp.*, 2007 WL 2126361 at *2, the case relied upon by Defendants in their request for a hearing, the court cites *Broadcast Music, Inc. v. DeGallo*, Inc., 872 F. Supp. 167, 169 (D.N.J. 1995).  The court in *DeGallo* explains the relevance of such information, stating that 17 U.S.C. § 504 "was designed to deal with infringers ranging from relatively small nightclubs, such as the one presented here, to large scale pirates, broadcasting across the country on electronic media. With due allowance for the level of culpability involved, the penalty must be proportionate to the extent of the infringement." *DeGallo*, 872 F.Supp. at 169.  Here, affidavits and documents provided by Plaintiffs contain sufficient information regarding the nature of Defendants' business and also establish that the extent of Defendants' infringement was relatively small and not large scale piracy.  Therefore, it does not appear that any information to be provided by Defendants at a hearing with regard to this factor could be of any more help to them in the determination of statutory damages.

Typically, "in the narrow class of cases dealing with willful, unauthorized, musical performances in public establishments, the damages awards range from two times the licensing fee to five times the licensing fee." *DeGallo*, 872 F. Supp. at 169.  In fact, cases within this Circuit have recognized that the method of awarding statutory damages based "on some multiple of unpaid fees is more appropriate than measuring damages by the number of infringements." *H.S.I.*, 2007 WL 4207901 at *6 (citations omitted) (awarding "statutory damages of three times the unpaid fees"); *Gnat Booty Music v. Creative Catering of Wadhams, LLC*, --- F. Supp.2d ---, No. 09-14746, 2011 WL 43427 (E.D. Mich. 2011) (awarding approximately three times the total cost of licensing fees after stating that "courts have routinely ordered damages well in excess of-and typically approximately three times-the amount the defendant would have paid if it had properly obtained a license"); *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994) (awarding approximately "three times" the license cost after accepting the contention that "courts typically award three times the amount of a properly purchased license for each infringement").

The reasoning behind such a de facto treble damages award "is to put defendants 'on notice that it costs less to obey the copyright laws than to violate them.'" *Sailor Music*, 867 F. Supp. at 570 n.7 (citing *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D.Va.1985)); *see also Gnat Boot Music*, 2011 WL 43427 at *3.  Here, in light Defendants' willful infringements, evidenced by the fact that Defendants ignored Plaintiffs' 92 documented attempts (over a two-and-a-half year period of time) to inform Defendants of their need to obtain licensing in order to publicly perform copyrighted works, the Court concludes that Plaintiffs' request for statutory damages in the amount of $7,750 for each of

four infringements is appropriate and warranted.

Accordingly, Plaintiffs are entitled to recover from Defendants $7,750 in statutory damages for each infringement, *i.e.*, a total of $31,000 in statutory damages.

### C.   **Attorney Fees and Costs**

Finally, Plaintiffs seek attorney fees and costs in the total amount of $3,082.03. Pursuant to 17 U.S.C. § 505, in copyright infringement cases, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."

In determining whether to award attorney fees, the Sixth Circuit instructs the Court to consider a "series of factors" including "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). The Sixth Circuit also holds that "[t]he grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely.'" *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citations omitted).

Here, in light of Defendants' willful infringements, the Court concludes that Plaintiffs are entitled to attorney's fees and costs pursuant to § 505. Plaintiffs have evidenced, via the affidavit of counsel, reasonable attorney's fees in the amount of $2,683.50 and costs in the amount of $398.53.

Accordingly, Plaintiffs' Motion with regard to attorney fees and costs is **GRANTED**.

Plaintiffs shall recover from Defendants attorney fee's and costs in the total amount of

$3,082.03.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Default Judgment (Doc. 10) is

**GRANTED**. Judgment shall be entered in favor of Plaintiffs and against Defendants as

follows:

(1)    Plaintiffs shall recover from Defendants statutory damages of $7,750 on
       each of the four counts of copyright infringement, for a total statutory
       damage award of $31,000.00;

(2)    Plaintiffs shall recover from Defendants attorney fees and costs in the
       amount of $3,082.03;

(3)    interest on the full amount of this Order from the date of judgment until
       paid pursuant to 28 U.S.C. § 1961; and

(4)    Defendants are hereby **ENJOINED** and **RESTRAINED** from
       infringing, in any manner, the copyrighted musical compositions
       licensed by BMI.

A separate entry of Judgment will issue.

**IT IS SO ORDERED**.

Date:  _5/27/11_                              _Timothy S. Black_
                                             Timothy S. Black
                                             United States District Judge